## MARTIN v. ROESCH.

### Opinion delivered March 18, 1893.

*Betterments—Land of the State.*

> The betterment act, which in certain cases makes the value of improvements upon land a charge thereon in favor of a person in possession under color of title, does not apply to land belonging to the State; accordingly, the value of improvements made upon land which has forfeited to the State for non-payment of taxes cannot become a charge thereon, as against a subsequent purchaser of the land from the State.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

*Ratcliffe & Fletcher* for appellant.

1. The State is not included in the general words of a statute, unless expressly mentioned, or it be clear by necessary implication that the State was intended to be included. End. Int. Stat. secs. 161, 166–7; Angell on Lim. pp. 30, 32, *et seq.;* 32 Ark. 50, 51; 28 Miss. 762; 20 Pa. St. 398; 2 Mason, 314; 9 Gill. 105, 117; 4 Cowen (N. Y.), 143; 41 N. H. 238; 7 Ired. (N. C.), 48. The courts recognize exceptions to the general rule in cases of enactments "made for public good, the advancement of religion and justice, and to prevent injury and wrong," for the benefit of the poor, and to regulate the mode of proceeding in suits, etc. 3 Cush. (Mass.), 25; 9 Wall. 655; 14 Pet. 301; 106 U. S. 272; 36 Ark. 155. But this exception is not allowed when any prerogative or right of the State is affected or divested, or when it contravenes public policy. 14 Pet. 315; 20 Wall. 264; 19 S. W. Rep. 959.

2. If no claim for betterments under the statute (Mansf. Dig. sec. 2644) can be made against the State, none can be made against its vendee. 10 Ark. 460; 14 *id.* 290; 23 *id.* 19.

*Vaughan & Collins* and *Oliphint & Shackleford* for appellees.

1. The betterment act was passed in the interest of justice to protect innocent and *bona fide* claimants to land, and the State is bound. It was an act for the public good. The terms are general and sweeping—no exceptions were made, and the courts can make none. End. Int. Stat. sec. 161, note 53; *ib.* sec. 166; Sedg. on Int. & Const. Stat. p. 107, quoting Endlich, p. 230 and note 87; 48 Ark. 183, 88; 24 Tex. 61; 22 Kas. 170; 58 Miss. 717; 47 Wis. 180; 36 Ark. 155; 48 *id.* 188; 55 Tex. 319.

2. But if the State was not bound by the statute, the exemption is personal, and it does not enure to its vendee under a *quit-claim* deed. Angell on Lim. (May's ed.), sec. 39; 4 Dev. (N. C.), 568; 8 Ohio, 298; 9 Shep. (Me.), 445; 12 Ill. 38; 3 S. &. R. (Pa.), 291.

BATTLE, J. This was an action of ejectment instituted by R. W. Martin, in his life time, against Barbara Roesch, Eugene Jabine, and others holding under them, for the recovery of a certain tract of land in Pulaski county.

Martin claimed title and possession by virtue of a deed executed to him by the Commissioner of State Lands, on the 18th of February, 1889, which recites that the land had been sold under a decree of the Pulaski chancery court, on the 2d of November, 1883, to the State of Arkansas, for the taxes, penalty and costs due thereon.

Roesch and Jabine admitted that they held the land, and averred that they had peaceably improved it, under color of title, in the belief they were the owners.

The cause was tried by the court sitting as a jury. Evidence was adduced tending to prove that the defendants, Roesch and Jabine, had held and improved the land, but it was conceded, at the same time, by all the parties,

that there was a house on the land which had been placed there before the State acquired title, except a shed-room and other improvements of the value of $25, and that all the other improvements were made before the plaintiff purchased from the State, and that neither of the defendants had any notice of the claim of the State or plaintiff to the land, and that the improvements were peaceably made, in good faith, and by each of them under the belief that he or she held under color of title.

The court found that Martin was the owner and entitled to the possession of the property in controversy, "but found that Mrs. Roesch was entitled to $437.50 for improvements placed upon the land claimed by her, less $148.50 rents, leaving a balance of $289, and that Eugene Jabine was entitled to $351.25 for improvements on the land claimed by him, less $190 rents, leaving a balance of $161.25, and ordered that Martin pay these balances before he could recover possession of the land;" and plaintiff appealed.

The judgment of the court was based upon sections 2644 and 2645 of Mansfield's Digest. Do these statutes affect the State?

It has been said that it is presumed that the legislature, in enacting laws, "has primarily in view the establishment of rules regulating the conduct and affairs of individuals, not those of the sovereignty." Acting upon this presumption, courts have generally held that, "in the construction of statutes *declaring or affecting rights and interests*, general words do not include the State or affect its rights, unless it be especially named, or it be clear by necessary implication that the State was intended to be included." *Cole* v. *White County*, 32 Ark. 51.

In *United States* v. *Herron*, 20 Wall. 263, the court said: "It is a maxim of the common law, said Savage, C. J., that when an act of Parliament is passed for the

public good, as for the advancement of religion and justice, or to prevent injury and wrong, the king shall be bound by such act, thoughnot named, but when a statute is general and any prerogative, right, title, or interest would be divested or taken from the king, in such a case he shall not be bound, unless the statute is made by express words to extend to him, for which he cites both English and American authorities, and adds, that the people of the State being sovereign have succeeded to the rights of the former sovereign, and that the people of the State are not bound by the general words in the insolvent law." And this principle, the same court said, "has never been questioned by any well considered case, State or Federal."

In *Jones* v. *Tatham*, 20 Pa. St. 398, it was held that a statute authorizing a company to enter upon *any land* for the purpose of locating a canal, which it was authorized to construct, did not apply to land belonging to the State. The court, in speaking of the statute, said: "It authorizes the cutting of a canal through the island, on making compensation to the owners; and every relevant line in the act shows that private owners alone were intended. The purpose was to exercise the right of eminent domain, and not to grant to the company the land of the State. It was declared that, for a fair compensation, private rights should yield to the intended public improvement. Words of a statute applying to private rights do not affect those of a State. This principle is well established, and is indispensable to the security of the public rights. The general business of the legislative power is to establish laws for individuals, not for the sovereign; and when the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily implied. This principle applies with peculiar force to grants of corporate privileges, or franchises, to transfers of pub-

lic property, and to grants of power to take the property of the citizen without his consent."

In *Cole* v. *White County*, 32 Ark. 45, the statute providing that "in *all cases* when any officer or other person is required to perform any duty for which no fees are allowed by any law, he shall be entitled to receive such pay as would be allowed for similar services," was considered. Acting upon the principle stated, this court held that such statutes would not embrace services for the State or a county, unless they were expressly named, or necessarily implied.

Starting with the presumption that, primarily, the statutes are intended to regulate the rights and affairs of individuals only, let us see whether the statutes upon which the judgment in this case was based include the State. Section 2644 provides that if any person, believing himself to be the owner, shall peaceably improve any land, under color of title, he shall be paid the value of the improvements made and *taxes* paid by him on the land before possession shall be delivered to the owner. The lands for the payment of taxes on which the *bona fide* occupant is entitled to be reimbursed are obviously private lands, public lands being exempt from taxation.

Section 2645 is as follows : "The court or jury trying such cause shall assess the value of such improvements in the same action in which the title to said lands is adjudicated ; and on such trial the damages sustained by the owner of the lands from waste, and such mesne profits as may be allowed by law, shall also be assessed, and if the value of the improvements made by the occupant and the taxes paid as aforesaid shall exceed the amount of said damages and mesne profits combined, the court shall enter an order as a part of the final judgment providing that no writ shall issue for the possession of the lands in favor of the successful party until payment has been made to such occupant of the balance

due him for such improvements and the taxes paid ; and
such amount shall be a lien on the said lands, which may
be enforced by equitable proceedings at any time within
three years after the date of such payment." It pro-
vides, as stated, that if the value of the improvements
and taxes exceed the damages and mesne profits, the oc-
cupant shall have a lien on the land for the excess, which
may be enforced by equitable proceedings. No excep-
tion is made, yet it is evident that the relief provided
by the latter statute has no reference to the State ; for,
under our constitution, the State can never be made a
defendant in any of her courts, and no money can be
drawn from the treasury except in pursuance of a spe-
cific appropriation by law. The conditions upon which
the owner is allowed, by this and the preceding section,
to recover the possession of his land, and the remedy of
the occupant to enforce them, are means devised to en-
force the payment of the value of the improvements,
and are inconsistent with so much of the constitution as
provides how the obligations of the State shall be col-
lected. (Constitution, art. 5, secs. 20, 29 ; art. 16, sec.
12). The presumption is, the legislature did not intend
to violate or evade the constitution. Every reasonable
construction that can be placed upon these sections nec-
essarily excludes the idea that the State is included in
them.

Sections 2644 and 2645, if they include the State, are
inconsistent with the statutes which specially regulate
the disposition of the State's lands.* These statutes
provide that the lands shall be sold, prescribe the terms
of sale, and fix the price. When the land is sold accord-
ing to these terms, and the price is paid, the purchaser
acquires all the interest and estate of the State in the
land, including the improvements on it. If the land can
be encumbered by a lien for improvements made upon it

---

* See Mansf. Dig., secs. 4243–4, as amended by Acts 1887, p. 217.

while it constitutes a part of the public domain, the State may become indirectly liable in many cases for a sum larger than the price for which its agents are authorized to sell, or lose it, or the purchaser, if he takes the land with the lien, will fail to get that which he purchased and, to acquire it, will be forced to pay something in addition to the price thereof, as fixed by the statutes regulating the sale. This case is a fair illustration of the inconsistency of the statutes, if the lands of the State can be encumbered by improvements. The price of the land sued for, as fixed by the statutes regulating the sale of it, was $50. According to the statutes under which it was sold, the appellant became the owner of it and the improvements when he paid the $50 and received the Commissioner's deed. The value of the improvements is much greater than $50. This shows the inconsistency of a construction of sections 2644 and 2645 which would cause them to affect the State's lands and the other statutes, and is another evidence that such a construction is improper. According to the rule followed in *Chamberlain* v. *State*, 50 Ark. 132, the former (sections 2644 and 2645) must yield to the latter statutes.

But it may be said that there is an exception to the rule we have stated. It has been held by this court that "when a State steps down into the arena of common business in concert, or in competition, with her citizens, she goes divested of her sovereignty," and the rule we have stated does not apply. *Calloway* v. *Cossart*, 45 Ark. 81. But the State has not done so in this instance, but acquired the land in question by the rightful exercise of a strictly governmental power—the right to raise revenue for the purpose of maintaining its existence.

Reverse and remand for a new trial.