LINWOOD & AUBURN LEVEE DISTRICT *v.* STATE.

Opinion delivered December 13, 1915.

1. STATUTES—CONSTRUCTION—RIGHTS OF STATE.—In the construction of statutes declaring or affirming rights and interests, general words do not include the State or affect its rights, unless it be especially named, or it be clear by necessary implication, that the State was intended to be included.

2. CONDEMNATION—LEVEE DISTRICT—STATE PROPERTY.—Act 5, p. 6, Acts 1909, authorizing condemnation proceedings by a levee district, *held*, not to apply to condemnation of the State's property, either by express wording or by inference.

3. CONDEMNATION—LEVEE DISTRICT—PUBLIC USE—CIVIL ACTION.—A proceeding for the condemnation of property for public or *quasi*-public uses, is a civil action, between adverse parties.

4. CONDEMNATION—STATE'S LAND—LEVEE DISTRICT.—A suit to condemn a State's property for the construction of a levee, constitutes a suit against the State within the inhibition of article 5, section 20, of the Constitution of 1874, which provides that the State shall not be sued, where the proceedings would bring the State and its functionaries into court for adjudicating the question of the amount of compensation to be paid for land taken for levee purposes. *Semble*, the Legislature may grant a right-of-way for public uses over any of its property, including the State farm, and may establish a method, by reference to a board or tribunal created for that purpose, of ascertaining the amount to be paid the State as compensation for the land taken, if the Legislature determines that compensation should be paid.

Appeal from Lincoln Circuit Court; *W. B. Sorrells,* Special Judge; affirmed.

*J. Bernhardt* and *T. D. Crawford,* for appellant.

1. This is not an action against the State within the prohibition of article 5, section 20, of the State Constitution. The provision that "the State of Arkansas shall never be made defendant in any of her courts" is but a declaration of the policy of all States, where no statute expressly authorizes the sovereign to be sued. Its meaning is that claims against the State must be passed upon by the Legislature, and their payment provided for by appropriations made by that body. The framers of the Constitution had in mind only ordinary actions at law or suits in equity in which a judgment could be en-

tered against the State or costs be incurred by it. This proceeding is held to be a special one and not an "action" within the meaning of the statute. 2 Lewis, Eminent Domain, § 512, cases cited; 91 Ind. 451, 46 Am. Rep. 613; 79 Ark. 154. There is an obvious distinction between ordinary actions and condemnation proceedings. 204 U. S. 576; 164 Fed. 745.

The Constitution had no reference to condemnation proceedings. It was never intended that public improvements should never be made across State lands without awaiting legislative action.

To hold that the board of inspectors may not proceed with this necessary improvement because the levee is in part to be located on the State's land is in effect taking from the board the power to protect the State farm as well as the other lands in the district from overflow, a duty delegated to that board by the Legislature. There is nothing in the Constitution or statute to prevent the board, in discharging this duty, from entering upon and using a portion of the State's land. There is no reason why damages to the State's land should not be ascertained and the award paid to the State, as in case of other land owners. Randolph, Em. Dom., § 297; 3 Ind. 421; 88 S. W. 436.

This court has frequently held that statutory proceedings to condemn land for right-of-way or other public purpose is special, to ascertain the compensation to be paid the owner for the land to be taken, and that no provision is made for an issue upon the right to condemn. 99 Ark. 63, and cases cited. If it is desired to test the authority of the petitioner to condemn, or the question whether the use is in fact a public one, these questions must be raised by injunction. 104 Ark. 344; 121 Fed. 276; 43 Ark. 120; 76 Ark. 239.

2. The rule which forbids the condemnation of land for a public use which is already devoted to a public use, is limited to the cases where the two uses are inconsistent. 102 Ark. 492. But there is no inconsistency between the use of this land for farming purposes and the use of part

of it to protect the remainder from overflow.  The levee district was in existence when the State purchased the farm, and the Legislature has repeatedly recognized the boundaries of the district.  Acts 1893, chap. 67, § 1; Acts 1905, p. 480.

3.  In this case, under the statutes relating to the district, it is authorized to condemn land of the State within the district.  It is true that the sovereign is not bound by a general statute unless expressly mentioned or necessarily included by implication.  66 Ark. 48, 52. This rule is frequently applied in regard to the statute of limitations, but this principle has no application where the State descends into the arena of common business in concert or competition with her citizens, in which case she goes divested of her sovereignty.  45 Ark. 81; 56 Ark. 491; 57 Ark. 475; 7 How. 194.  In this case the State has divested herself of her sovereignty by going into the business of farming.  It is immaterial why the State entered into the business, whether as an incident to handling convicts or not; the material fact is that she did go into the business in competition with her citizens.  Having entered into the arena of business, renders the State liable to the application of general statutes.

Moreover, the special statutes applicable to this district impliedly, if not expressly, authorize the use of the State's land for levee purposes.  Acts 1893, p. 105; Acts 1905, p. 480; 3 Ind. 421; 88 S. W. 436; 164 S. W. (Mo.) 509; 48 N. E. 485; 116 Ill. 449, 6 N. E. 49; 195 Ill. 271; 73 N. E. 811; 141 N. C. 128; 23 Utah, 474; 64 S. W. 585; 97 Ark. 86; 69 Ark. 104.

*Wallace Davis,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1.  This is an action against the State within the meaning of the Constitution, article 5, section 19.

It is clear that the Legislature intended a condemnation proceeding by levee districts to be a judicial proceeding, and, we think, this court has clearly recognized such a proceeding to be a civil action.  Act 5, Acts 1909; Act 53, Acts 1905, § 3; Castle's Supplement, p. 250; 105

Ark. 5, 10.   See also 125 N. W. 903; 26 N. W. (Ia.) 40, 41; 91 Sup. Ct. Rep. (U. S.) 367, 378; 124 U. S. 197, 200; 71 N. E. (Ill.) 334, 335; 83 S. E. (Ga) 135, 136; 91 Ark. 531, 535; 98 Ark. 525, 529.

2.   Where land is being used by the State, it can not by eminent domain be devoted to another use without the express consent of the sovereign. *Supra;* 39 Ill. App. 610; 25 N. W. (Minn.) 345; 73 Hun 256, 261; 53 Ga. 120, 124; 96 N. E. 238; 144 N. W. (Minn.) 960; 138 S. W. (Tex.) 575, 580; 79 Atl. 440, 442; 110 N. W. (Neb.) 629, note.

3.   The use which appellant seeks to make of the farm is inconsistent with its present use.   43 Ill. 303.

4.   The statute relating to this district does not authorize it to condemn lands of the State.   There is no merit in the contention that the State has stepped down into the arena of business by conducting a farm in competition with free labor.   She operates the farm not for revenue, but for the maintenance of the hundreds of convicts in custody, who must be fed and clothed at her expense.

McCulloch, C. J.   Appellant is a levee district created by a special act of the Legislature at the session of the year 1893.   As originally created, the district was composed of four townships in Lincoln County and a portion of a fifth one, and also a certain portion of Jefferson County.   An amendatory statute in 1905 added two townships in Desha County.   The purpose of the district is to construct and maintain a levee along the Arkansas River front to prevent inundation of lands in the district from the waters of that river.   The statute authorized the election of a board of levee inspectors which is constituted the governing board of the district.   The board of inspectors is given authority to assess the lands in the district for the purpose of raising funds to pay the cost of constructing the levee and maintaining it.   Authority is also given to employ engineers and form plans for construction of the work, and and to let contracts for the same to be done.   Authority is also given to the board of inspectors to locate the route of the levee.

Section 18 of the Act provided as follows: "If any person shall be aggrieved by running any levee through his lands, he shall within ten days after the levee is located, give notice to the inspector of the said district where his land is so situated, who shall thereupon immediately notify the sheriff of the proper county to summon six land owners of the county, not interested in the lands through which the levee runs, and not related, or connected by marriage or otherwise with owner thereof to meet at a time fixed by such inspector, of which such land owner shall have at least three days' notice, which six persons after being duly sworn shall proceed to examine said premises and without delay take such other testimony as is present, and after taking into consideration the advantages and disadvantages of said levee to claimant, shall award to him such damages, if any, as they may deem just and right, the finding shall be signed by the jurors, and delivered to the sheriff, and by him returned to the proper board of inspectors, and by them entered of record on its minutes, which finding shall be final in the premises."

The Act of 1905, referred to above, authorized the issuance of bonds for the construction of the levee. There was no express provision in the statute for condemning a right of way, so the General Assembly of 1909 enacted a statute applicable to this district and to two others, authorizing the institution of condemnation proceedings in the circuit court in cases where the governing board of the district shall "fail to obtain by agreement with the owner of the property, through which lines of levee, ditch or drain may be located, the right of way over the same." That statute provides in substance that in condemnation cases the owner of the property shall be given ten days' notice of the presentation of the petition, and that in case the owner should be a nonresident of the State, an infant, or person of unsound mind, "such notice shall be given by publication in any newspaper published in the county which is authorized by law to publish legal notices," etc. The statute also prescribed the method of procedure in the assessment

of damages and for a deposit of money in advance, pursuant to the order of the court or judge, so as to enable the district to proceed with the work until the amount of compensation to the owner shall be determined.

The Legislature in 1897 authorized the State Board of Penitentiary Commissioners "to purchase or lease and equip a farm or farms on which to work State convicts, and to pay for the same out of the labor or product of the labor of any convicts," and pursuant to that authority the penitentiary commissioners purchased a large tract of land known as the Cummins Farm, situated on Arkansas River, within the bounds of the Linwood & Auburn Levee District.

According to the allegations of the petition in this case, presented by the levee district, "a portion of the line of levee under its control and jurisdiction lies in Lincoln County, Arkansas, and for a considerable distance is built upon the State farm in said county, and has been maintained thereupon ever since the organization of the district; that for the past several years the Arkansas River has gradually encroached upon said line of levee until it has endangered it; that through the efforts of the petitioning inspectors, supplemented by the funds of the district, vast sums of money have been expended in attempting to protect the caving banks of said stream and the levee on said property; that these efforts continually put forth and the surplus funds of the petitioner have been exhausted in the prosecution of said work until the spring of the present year, when the banks of the river caved to such an extent as to injure the present levee on the State farm, and same is at divers points on said farm entirely unsafe and insufficient to protect the district included in the levee district, and that, after receiving the report and advice of its own engineer and other engineers who are competent to know, petitioners find that, in order to properly protect the lands embraced in this district, it will be necessary to build an entirely new levee or loop on said State farm."

The levee district instituted this proceeding in the circuit court of Lincoln County to condemn a new right of way along, over and through the State farm. The Attorney General appeared for the State and the penitentiary commissioners and demurred on the ground, among others, that this is a suit against the State. The circuit court sustained the demurrer and dismissed the petition.

(1-2)   The Act of 1909* authorizing condemnation proceedings by the levee district does not in express terms apply to condemnation of the State's property. The clear inference from the language of the Act is that it was intended to apply only to private ownership, and it is doubtful whether it could be construed to apply to condemnation of the State's property, even if the Legislature possessed the power to authorize such proceeding. The well settled rule is that "in the construction of statutes declaring or affecting rights and interests, general words do not include the State or affect its rights, unless it be especially named, or it be clear by necessary implication, that the State was intended to be included." *Cole* v. *White County,* 32 Ark. 45-51; *Martin* v. *Roesch,* 57 Ark. 474; *United States* v. *Herron,* 20 Wall. 263.

There is an exception "when a State steps down into the arena of common business in concert, or in competition with her citizens, she goes divested of her sovereignty. *Calloway* v. *Cossart,* 45 Ark. 81. The facts of the present case, however, do not form an exception to the general rule, for the State in purchasing and maintaining a convict farm is exercising a necessary public function, and does not thereby "step down into the arena of common business in concert, or in competition with her citizens." The convict farm is maintained, not for profit, either directly or incidentally, but solely for the purpose of taking care of convicts. The fact that the plan is to operate the farm so as to make it self-sustaining does not make it a private enterprise.

---

*Act 5, p. 6, Acts 1909.

(3-4)    But even if the Legislature had attempted to authorize a proceeding against the State for the condemnation of its property, the question would arise whether or not the Legislature could do so. The Constitution of the State contains an express provision that "the State of Arkansas shall never be made defendant in any of her courts." Art. V, Sec. 20. That language is very broad. It is not confined to a proceeding which would constitute strictly a civil action. It says that the State shall never be made a defendant. This court has held that a proceeding for the condemnation of property for public or *quasi*-public uses is a civil action. *State, ex Rel., etc* v. *Rowe,* 69 Ark. 642; *McDonald* v. *Fort Smith & Western Rd. Co.,* 105 Ark. 5. The Supreme Court of the United States has decided that such proceedings are civil actions. *Kohl* v. *United States,* 91 U. S. 367; *Boom Company* v. *Patterson,* 98 U. S. 403; *Searl* v. *School District,* 124 U. S. 197. The proceedings are special and only authorize the ascertainment of the amount of compensation to be paid the owner for land to be taken, without containing a provision for making an issue upon the right to condemn (*St. L., I. M. & So. Ry. Co.* v. *Faisst,* 99 Ark. 61), but nevertheless it is a civil action between adverse parties. *Milwaukee Light, Heat & Traction Co.* v. *Burlington E. L. & Power Co.,* 142 Wis. 436, 125 N. W. 903.

The Supreme Court of the United States, in speaking of the proceedings to appropriate private property for public use, said: "If that inquiry take the form of a proceeding before the court between parties, the owner of the land on one side and a company seeking appropriation on the other, there is a controversy which is subject to the ordinary incidents of a civil suit." *Searle* v. *School District, supra.*

In the following cases it was expressly decided that a suit to condemn a State's property constitutes a suit against the State within the inhibition of not allowing the State to be sued. *People* v. *Sanitary District,* 210 Ill. 171, 71 N. E. 334; *Western Union Telegraph Co.*

v. *W. & A. R. Co.*, 142 Ga. 532, 83 S. E. 135. Cases are cited by appellant's counsel deciding that the property of a State can be condemned for public use, but it does not appear in any of those cases that the question of the right of the State to be sued, or whether such proceeding constituted a civil action, was raised or decided. There can be no doubt that the Legislature of this State has the power to grant a right of way for public uses over any of its property, including the State farm; and that it can establish a method, by reference to a board or tribunal created for that purpose, of ascertaining the amount to be paid to the State as compensation for the land taken, if the Legislature determines that there should be compensation paid; but that is not the question presented now in this proceeding to bring the State and its functionaries, the Board of Penitentiary Commissioners, into the court for adjudicating the question of the amount of compensation to be paid for land taken for levee purposes.

We are not called on in this case to determine the question whether or not the authority granted to the levee district by the Act creating it, to construct levees along the Arkansas River front over the lands now owned and occupied by the State, has been withdrawn from the State's subsequent purchase of those lands for use as a convict farm. The Act of 1893 creating this levee district authorized the board of inspectors of the levee district to lay off the route of the levee, and also provided a remedy for the owners of land to ascertain the amount of compensation to be paid. That statute evidently applied to private ownership, for the State did not own any land in the district at that time. The levee was, according to the allegations of the petition in this case, constructed across the lands now owned by the State, and the purchase of the lands in that condition was made by the State.

We have reached the conclusion that the Act of 1909 does not authorize a proceeding against the State for the condemnation of its property, and that the Legislature has no power to authorize such proceedings against

the State which constitute civil actions. This is sufficient to determine the question involved in the present case, and the judgment of the circuit court being found correct, the same is affirmed.