**KANSAS CITY SOUTHERN RY. CO. v. MORLEY, Commissioner of Revenues.**

Civ. No. 880.

United States District Court
W. D. Arkansas, Fort Smith Division.

Feb. 8, 1950.

Joseph R. Brown, General Counsel, Kansas City Southern Ry. Co., Kansas City, Missouri, for plaintiff.

O. T. Ward, Chief Attorney, Arkansas State Revenue Department, Little Rock, Arkansas, for defendant.

JOHN E. MILLER, District Judge.

On December 9, 1949, the plaintiff, a corporation organized and existing under the laws of the State of Missouri and engaged in the operation of a line of railroad from Kansas City, Missouri, to Port Arthur, Texas, through the Fort Smith Division of the Western District of Arkansas, filed its complaint against the defendant, a citizen and resident of the State of Arkansas and the duly appointed and acting Commissioner of Revenues for the State of Arkansas.

The plaintiff alleges that it in due time filed its income tax returns as required by the laws of Arkansas for the years 1943, 1944 and 1945 with the Commissioner of Revenues for the State of Arkansas; that it reported in said returns its net income allocable to Arkansas and duly paid to the State of Arkansas the income taxes shown to be due by said returns.

That the defendant, "on behalf of said State of Arkansas", has by written notice made demand upon plaintiff for additional income taxes for the said years 1943, 1944 and 1945; that the written notice was the

first demand made upon the plaintiff for additional state income taxes and that the defendant is now threatening to impress a lien upon the plaintiff's property in the State of Arkansas and have the same sold under Act 118 of the Acts of Arkansas of 1929, as amended, Ark.Stats. (1947) Secs. 84-2001 to 84-2048, inclusive, and Act 135, Acts of Arkansas for the year 1947; that, if the defendant carries out the threat to impress a lien upon plaintiff's property in the State of Arkansas and to sell the same in satisfaction thereof, the same would disrupt plaintiff's service in interstate commerce and result in taking plaintiff's property without due process of law, in violation of Article 2, section 8 of the Constitution of the State of Arkansas and Amendment 14 of the Constitution of the United States.

That the claims sought to be asserted by the defendant are barred by the statute of limitations; that the demands and attempts of defendant to collect said taxes are illegal and to impose interest and penalties for failure to pay same constitutes an illegal exaction from plaintiff for which plaintiff is entitled to relief; that plaintiff has no adequate remedy at law and it is entitled to an injunction against defendant enjoining him from attempting to collect said alleged taxes.

The plaintiff prays that the defendant be permanently enjoined from taking any action against plaintiff to collect said taxes and for all other relief to which it may be entitled in equity.

On December 15, 1949, the defendant filed a motion to dismiss for want of jurisdiction on the ground that the State of Arkansas is the real party in interest; that the income tax sought to be collected is the property of the State of Arkansas and that the defendant, Morley, is acting only in his official capacity as Commissioner of Revenues; that the said Morley has no personal interest or claim to said tax and that the State of Arkansas is not a citizen and that, therefore, there is no diversity of citizenship between plaintiff and the real party in interest, the State of Arkansas.

That, under Section 32 of the Income Tax Act of the State of Arkansas, Ark. Stats, § 84-2038, if a taxpayer is dissatisfied with the computation or assessment of the tax made by the Commissioner, the taxpayer is authorized to appeal said assessment within thirty days to the Pulaski Chancery Court; that if said appeal is taken the amount of the tax so assessed by the Commissioner shall be paid to the Commissioner and deposited in a special fund, and that the judgment of the court shall determine if said assessment and determination of the amount of tax due is correct and, if found incorrect, it shall enter judgment for refund or payment of all or any part of said tax illegally or wrongfully collected; that, under the provisions of the statute, the plaintiff has an adequate and complete remedy at law; that an appeal will lie from a judgment or decree of the Pulaski Chancery Court to the Supreme Court of Arkansas and an appeal on any proper question may be taken from the judgment of the Supreme Court of Arkansas to the Supreme Court of the United States.

The attorney for the defendant, Commissioner of Revenues, has filed a statement of points and authorities in support of the motion to dismiss as required by local Rule 8, but because of the inadequacy of the citation of authorities, the memorandum has not been of maximum service to the Court in determining the questions presented by the motion to dismiss. He has not furnished the Court with any citations of the applicable official statutes of the United States contained in Title 28, United States Code Annotated, effective September 1, 1948, nor has he referred to the compilation of the statutes of Arkansas appearing in Arkansas Statutes, 1947, Annotated.

■ In determining the motion to dismiss the Court is required to accept the allegations of facts in the complaint as true and upon that assumption, the Court has considered the motion to dismiss.

Section 1341 of Title 28 U.S.C.A., effective September 1, 1948, is a revision of the last sentence of Section 41(1) of Title 28 U.S.C.A., 1940 Ed., which is a part of the Act of August 21, 1937, of the First Session of the 75th Congress, and which appears in 50 Stat. 738. The revised statute above referred to reads as follows: "The district

court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy tnay be had in the courts of such State."

■ In Miller v. City of Greenville, Mississippi, and Chicot County v. City of Greenville, Mississippi, 8 Cir., 138 F.2d 712, 721, the Court in quoting from Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 1072, 87 L.Ed. 1407, said:

" 'The considerations which persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax, and which led to the enactment of the Act of August 21, 1937, are persuasive that relief by way of declaratory judgment may likewise be withheld in the sound discretion of the court. With due regard for these considerations, it is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this Court. This affords an adequate remedy to the taxpayer, and at the same time leave undisturbed the state's administration of its taxes.

" 'The Act of August 21, 1937, was predicated upon the desirability of freeing, from interference by the federal courts, state procedures which authorize litigation challenging a tax only after the tax has been paid. See S. Rep. No. 1035, 75th Cong., 1st Sess.; R. R. Rep. No. 1503, 75th Cong., 1st Sess.' "

In view of the provisions of the statute above set forth, the question arises whether the plaintiff has "a plain, speedy and efficient remedy" in the courts of Arkansas to protect it against the payment of an illegal tax.

■ The plaintiff contends that its remedy is not adequate and seems to contend that, in order for the remedy to be adequate, a plaintiff must have the right to maintain the suit in the first instance in a federal court. The plaintiff cites Petroleum Ex-

ploration, Inc., v. Public Service Commission, et al., 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407, in support of his contention that the remedy provided by the Statute of Arkansas is not adequate. In the latter case the Court in quoting from Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 said: " 'The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved.' "

The Court further said:

"Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes. These are the considerations of moment which have persuaded federal courts of equity to deny relief to the taxpayer—especially when the state, acting within its constitutional authority, has set up its own adequate procedure for securing to the taxpayer the recovery of an illegally exacted tax.

"Congress recognized and gave sanction to this practice of federal equity courts by the Act of August 21, 1937, 50 Stat. 738, enacted as an amendment to Section 24 of the Judicial Code, 28 U.S.C. § 41(1)." Now Section 1341, Title 28 U.S.C.A., effective September 1, 1948.

Beginning 319 U.S. on page 300, 63 S.Ct. on page 1074, 87 L.Ed. 1407 of the opinion, the Court said: "The considerations which

304

persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax, and which led to the enactment of the Act of August 21, 1937, are persuasive that relief by way of declaratory judgment may likewise be withheld in the sound discretion of the court. With due regard for these considerations, it is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this Court. This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its taxes."

The case of Petroleum Exploration, Inc., v. Public Service Commission et al., supra, and other cases cited by plaintiff in no wise sustain the plaintiff's contention.

■ A reference to the statute, Arkansas Statutes (1947) Section 84-2038[1], reveals that the plaintiff does have a plain, speedy and efficient remedy under the law of Arkansas. Therefore, the plaintiff is not entitled to maintain the suit, and the motion to dismiss should be sustained.

There is another reason why the plaintiff cannot maintain the present suit. Amendment 11 to the Constitution of the United States is as follows: "The judicial power of the United States shall not be construed to extend to any suit in law or

1. "Section 84-2038. Appeal of tax revision—Payment of taxes under protest—Action to recover.—The determination of the commissioner upon any application made by a taxpayer for revision of any tax, may be reviewed in any court of competent jurisdiction by a complaint filed by the taxpayer against the Commissioner in the county in which the taxpayer resides or has his principal place of business, within thirty (30) days after notice by the commissioner of his determination, given as provided in section 31 (§ 84-2037) of this act. Thereupon appropriate proceedings shall be had and the relief, if any to which the taxpayer may be found entitled may be granted, and any taxes, interest or penalties paid found by the court to be in excess of those legally assessed, shall be ordered refunded to the taxpayer, with interest from time of payment.

"The collection of income taxes under this act shall not be stayed or prevented by any injunction, writ or order issued by any court; and no writ, order or process of any kind, staying or preventing the commissioner from taking any steps or proceedings in the assessment or collection of any income tax whether the same is legally due or not, will be granted by any court or judge; but in all cases, the person against whom any income tax shall stand charged shall be required to pay the same, and thereupon shall have his remedy as hereinafter provided.

"In all cases in which any income taxes are now or shall be hereafter charged by the Commissioner against any person or corporation, and the Commissioner shall claim the payment of the taxes so charged, or shall take any steps or proceedings to collect same, the person against whom such taxes are charged, or against whom proceedings shall be taken, shall, if he conceives the same to be illegal or unjust, pay the said taxes including the penalties notwithstanding under protest in writing such funds as the Commissioner shall be authorized to receive; and upon such payment being made, the Commissioner shall pay over the taxes and penalties if any, so collected into the State Treasury, giving notice at the time to the State Treasurer that the payment was made under protest, whereupon the State Treasurer shall credit all such receipt to a special fund entitled 'Income Tax Protest Funds.'

"The person so paying said taxes under protest may, at any time within 30 days afterwards, bring an action against the Commissioner for the recovery thereof in the Chancery Court of Pulaski County; and if it be determined in said action that such taxes and penalties, if any, were wrongfully or illegally collected for any reasons going to the merits, then the court before whom the case is tried shall certify that same were wrongfully collected and ought to be refunded, and thereupon the Commissioner shall issue his order to the State Treasurer to refund the said taxes and penalties, if any, to be repaid in conformity with the order of the court, and in preference to other claims against the State Treasurer.

"There shall be no other remedy in any case of the illegal wrongful collection of income taxes or the attempt to collect same than that provided in this act. (Acts 1929, No. 118, Section 32, p. 573, Pope's Dig., § 14055.)"

equity commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State."

This amendment became effective January 8, 1798, and was adopted to avoid the effect of the decision in Chisholm v. Georgia, 1793, 2 Dall. 419, 1 L.Ed. 440.

In Cargile, et al., v. New York Trust Company, 8 Cir., 67 F.2d 585, 587, the Court, in referring to Chisholm v. Georgia, supra, said: "This case led to the adoption of the Eleventh Amendment, since which time the federal judicial power does not extend to a suit brought against a state, without its consent, by a citizen of another state, even in cases arising under the Constitution or laws of the United States." Citing many cases.

■ The plaintiff contends that the suit is not a suit against the State of Arkansas, but the Supreme Court of Arkansas in Watson v. Dodge, 187 Ark. 1055, 63 S.W.2d 993, 994, after reviewing the adjudicated cases, said;

"It is perfectly evident that any suit, whether in law or equity, which has the purpose and effect, directly or indirectly, of coercing the state is one against the state. Our holding in this regard is in full accord with the views of the Supreme Court of the United States. In Hagood v. Southern, 117 U.S. 52, 6 S.Ct. 608, 615, 29 L.Ed. 805, that court held:

" 'Though not nominally a party to the record, it (the state) is the real and only party in interest, the nominal defendants being the officers and agents of the state, having no personal interest in the subject-matter of the suit, and defending only as representing the state. And the things required by the decrees to be done and performed by them are the very things which, when done and performed, constitute a performance of the alleged contract by the state. The state is not only the real party to the controversy, but the real party against which relief is sought by the suit.' "

The defendant is, as alleged in the complaint, an officer of the State of Arkansas and is attempting to perform the duties imposed upon him by law. If the additional taxes are levied and collected, they will be collected as taxes due the State of Arkansas. The defendant has no personal interest in them. In fact, the plaintiff alleges that the defendant is acting "on behalf of said State of Arkansas". Therefore, the State of Arkansas is the real party in interest and the plaintiff is not entitled to maintain this suit.

In Cargile v. New York Trust Company, supra, the Court 67 F.2d at page 588 said: "If, however, the officer is merely a nominal defendant, and the state is the real party in interest, then the suit is in substance one against the state, and cannot be maintained." Citing many cases.

■ Even though the State of Arkansas does not appear as a party defendant, the suit is one in substance against the State in its sovereign capacity and hence cannot be maintained unless it has given its consent to the maintenance of the suit, and plaintiff has not so alleged and does not claim that such consent has been given. Therefore, since the State of Arkansas is the real party in interest, the plaintiff is not entitled to maintain this suit.

The plaintiff contends that the defendant is attempting to collect an illegal exaction and that he is, therefore, acting beyond his sovereign authority and in so doing acts as an individual. To sustain this contention, the plaintiff cites Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 69 S.Ct. 1457, 1460 but that case does not sustain the contention of the plaintiff. In its opinion the Court said: "If the denomination of the party defendant by the plaintiff were the sole test of whether a suit was against the officer individually or against his principal, the sovereign, our task would be easy. Our decision then would be that the United States is not being sued here because it is not named as a party. This would be simple and would not leave room for controversy But controversy there has been, in this field above all others, because it has long been established that the crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign. In a suit against the officer to recover damages for the agent's personal actions that ques-

tion is easily answered. The judgment sought will not require action by the sovereign or disturb the sovereign's property. There is, therefore, no jurisdictional difficulty. The question becomes difficult and the area of controversy is entered when the suit is not one for damages but for specific relief: i. e., the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. In each such case the question is directly posed as to whether, by obtaining relief against the officer, relief will not, in effect, be obtained against the sovereign. For the sovereign can act only through agents and, when the agents' actions are restrained, the sovereign itself may, through him, be restrained. As indicated, this question does not rise because of any distinction between law and equity. It arises whenever suit is brought against an officer of the sovereign in which the relief sought from him is not compensation for an alleged wrong but, rather, the prevention or discontinuance, in rem, of the wrong. In each such case the compulsion, which the court is asked to impose, may be compulsion against the sovereign, although nominally directed against the individual officer. If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction."

The plaintiff cannot maintain the suit for either or both of the reasons above discussed, but aside from those holdings the case is not otherwise within the jurisdiction of the Court.

█ The plaintiff alleges that it is a resident of the State of Missouri and that the defendant, Dean R. Morley, is a citizen and resident of the State of Arkansas. The particular allegation is as follows: "Plaintiff and defendant are, therefore, residents and citizens of different states, and the amount in controversy herein exceeds the sum of $3,000.00, exclusive of interest and costs."

Since the instant suit is one against the State of Arkansas, the jurisdiction of this Court does not exist. The Court in Car-

gile v. New York Trust Company, supra, 67 F.2d at Page 589, said: "The suit being, in effect, one against the state, the officers named are simply nominal parties. Jurisdiction is based upon diverse citizenship. A state, however, is not a citizen, and a suit between a state and a citizen or a corporation of another state is not one between citizens of different states, and hence the Federal court has no jurisdiction, unless the suit arises under the Constitution, laws or treaties of the United States. There is here no diversity of citizenship between the real parties in interest, the state and the New York Trust Company, as trustee, and no other ground of jurisdiction is asserted. State Highway Commission [of Wyoming] v. Utah Construction Company, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262; Postal Telegraph Cable Company v. Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231; Minnesota v. Northern Securities Company, 194 U.S. 48, 24 S.Ct. 598, 48 L. Ed. 870."

Therefore the motion to dismiss for want of jurisdiction should be sustained.