ARKANSAS STATE HIGHWAY COMMISSION *v.* DODGE.

4-2888

Opinion delivered November 28, 1932.

*Hal L. Norwood,* Attorney General and *Walter L. Pope,* Assistant, for petitioner.

*Coleman & Riddick,* for respondent.

BUTLER, J. The respondent has made a concise statement of the case, which we adopt and set out as follows:

"R. J. Lynch and H. Levinson, doing business as R. J. Lynch & Company, brought a suit in the Pulaski Chancery Court against the chairman and members of the Arkansas State Highway Commission seeking to recover, as upon a *quantum meruit*, the value of labor and materials furnished the commission in the construction of certain roads and bridges in the State highway system. The highway commission filed a demurrer to the complaint upon the ground that the Pulaski Chancery Court was without jurisdiction of the case because it is one against the State of Arkansas. The demurrer was overruled. The Commission thereupon filed in this court a petition for a writ of prohibition to prevent the chancery court from proceeding with the case.

"In the case in the Pulaski Chancery Court it is alleged and admitted by the demurrer that the plaintiffs performed the work for the highway commission under certain written contracts requiring the construction of roads and bridges in the State highway system, and, further, that the work performed, labor done and materials furnished were in every respect in accordance with the plans and specifications of the State Highway Commission applicable to such construction work; that, after performance, the Highway Commission accepted the work, labor and materials furnished by plaintiffs; and that the roads and bridges built are now in use by the public as a part of the State highway system.

"The suit in the chancery court is brought to recover upon a *quantum meruit* for the reasonable and fair value of materials and labor furnished, because, though the work was done under written contracts, let after competitive bidding, there was no previous advertisement of the work as required by the statutes of this State."

It is conceded that, if the petitioners are correct in the position taken, and that the court improperly overruled the demurrer, prohibition is the proper remedy. Section 4, art. 7, of the Constitution; *Monette Road Imp. Dist.* v. *Dudley,* 144 Ark. 169, 222 S. W. 59; *Roberts* v. *Tatum,* 171 Ark. 148, 283 S. W. 45; *Ark. State Highway*

*Commission* v. *Dodge,* 181 Ark. 539, 26 S. W. ('2d) 879. It is insisted by the petitioner that this is a suit against the State, differing in essential particulars from *Ark. State Highway Commission* v. *Dodge, supra,* and that this suit cannot be maintained because of § '20, art. 5, of the Constitution, which provides: ''The State of Arkansas shall never be made a defendant in any of her courts.''

It is secondly insisted that, even though the suit might be maintained, the State is under no liability to Lynch & Company, and that, if there is a moral obligation, the General Assembly is the only source of relief. It seems to us that a consideration and discussion of the second point raised would at this time be premature and improper. The question we should now determine is, has the court below jurisdiction to hear and determine the case? and, if so, the question of liability would be first for its decision. Therefore, we proceed to a consideration of the question whether the suit can be maintained against the petitioner.

In *Ark. State Highway Comm.* v. *Dodge, supra,* where the right to maintain a suit against the Highway Commission was upheld, the case of *Grable* v. *Blackwood,* 180 Ark. 311, 26 S. W. (2d) 41, was cited in support of that holding. That was a suit brought against the State Highway Commission to enforce the payment of outstanding indebtedness incurred prior to January 1, 1927, against a road improvement district under act No. 153 of the Acts of 1929, which provided for the ascertainment of valid outstanding indebtedness incurred prior to the date mentioned against any road district, and for the payment thereof by the Highway Commission out of appropriations provided for the payment of road district bonds and interest obligations. Act No. 153 and the right of the plaintiffs to maintain the action was attacked on various constitutional grounds, but § 20, art. 5, was not invoked. It was held that the act did not violate the Constitution, and that the suit might be maintained against the Highway Commission. The case of *Urquhart* v. *State,* 180 Ark. 937, 23 S. W. (2d) 963, was also cited

in the majority opinion in support of the conclusion reached by the writer. That case was really an issue as to the extent of the liability of the State for interest upon a contract to purchase a State convict farm and the sufficiency of the appropriation to discharge the obligation, when its extent was adjudged by the courts of Pulaski County, the agencies created for that purpose. The following quotation was made from *Urquhart* v. *State, supra*: "The Legislature itself might have ascertained the amount, both of principal and interest, and have made an appropriation accordingly, but it elected to constitute another agency to make this finding of fact, and made an appropriation in what was assumed to be a sufficient amount to pay both the principal and interest, and, under the *remittitur* which has been entered, the appropriation is sufficient," and the court said: "It is true that suit was brought by the State, as the act provided it should be, but the act also provided that the State's vendor might litigate his claim for interest, and that either party should have the right to appeal from an unfavorable decision."

Mr. Justice SMITH and Mr. Justice MEHAFFY adopted the reasoning of Mr. Justice GRAVES in the case of *State, etc.,* v. *Bates,* 317 Mo. 696, 296 S. W. 419, and quoted with approval from that opinion as follows: "It (State Highway Commission) is an entity, with powers of a corporation, established and controlled by the State for a specific public purpose, but that does not make this legal entity the sovereign State. No contract it is authorized to make is made in the name of the State, but in the name of the Commission. The sovereign State could have contracted for the building of its public highways in its own name, but it chose to create a legal entity for this work. This act gave to this legal entity no part of the State's sovereignty, but authorized it to proceed to do certain work which the State could have done by private contract made direct with the State. Thus it has been well said in 14 C. J., at page 75: 'Although a corporation may be public, and not private, because established and controlled by

the State for public purposes, it does not necessarily follow that such a corporation is in effect the State, and so not subject to the rules of law governing other corporations, for the State may, by engaging in a particular business through the instrumentality of a corporation, divest itself *pro hac vice* of its sovereign character, so as to render the corporation subject to the rules of law governing private corporations. Thus, although incorporated banks, established by the State for its own public purposes and owned and controlled entirely by the State, are undoubtedly public corporations, it has been held that they are not for that reason invested with the attributes of sovereignty, but are mere corporations, and subject generally to the rules of law governing other corporations.' "

The conclusion was that the Highway Commission, as created and functioning, was in effect a *quasi* corporation clothed with the power to make contracts in its own name, and to discharge obligations out of moneys appropriated for the purpose of enabling it to carry out the duties prescribed by law, and that it was therefore an entity or juristic person, and suits against it arising out of an alleged default in its obligations in the conduct of the business intrusted to it would not be suits against the State, and that the action was authorized. Chief Justice HART and Mr. Justice HUMPHREYS, concurring, were of the opinion that the Highway Commission was but an agency of the State. They held, however, that § 20, art. 5, of the Constitution, properly interpreted, was merely a declaration of the general rule that a State may not be sued without its consent, but that the State had consented that suit be maintained against this agency, and said: "We can perceive no good reason why a State should not consent to being sued in her own courts upon such terms and conditions as her Legislature might prescribe. We do not think that the consent can be given except by the Legislature, which alone can declare the public policy of the State. If the State is to exercise .its sovereign power in building roads, and in constructing bridges

across navigable streams, it would seem that there should be a tribunal somewhere which might pass upon the claims of those with whom the agency of the State had contracted with reference to the matter, and what tribunal could be a more appropriate and safe guaranty of the equal protection of the laws than the courts established by the State for the protection of its citizens, and for such citizens who might come within its borders for pleasure or gain. * * * It seems to us that the State's sovereignty will be better preserved and protected by holding that a State may through its Legislature waive its immunity from suit and select the forum and prescribe the terms and conditions upon which it may be sued than to allow the Legislature to parcel out the State's sovereign functions to various bodies, by whatever name called, and allow them to be sued, thereby accomplishing by indirection what they say the State may not do directly.''

The writer, Mr. Justice KIRBY, and Mr. Justice McHANEY, dissented from the reasoning and conclusions reached by the other members of the court for the reason, as stated in our concurring opinion, in the case of *Baer* v. *Ark. State Highway Commission*, 185 Ark. 590, 48 S. W. (2d) 842, that, in our opinion, the Highway Commission was merely the agent through which the State acted, and, construing art. 5, § 20, as mandatory, we thought that under no circumstances could suits against the State Highway Commission be maintained. That case was decided also by a divided court, one view being that the suit which sounded *in tort* might be maintained under the authority of the Dodge case, *supra,* but that there was no legislation authorizing such character of suit. The Chief Justice, dissenting, insisted, as in the Dodge case, that there was no constitutional inhibition against the power of the State to consent to being sued in its courts, and very justly argued that, since it is recognized that the Legislature might establish commissions to pass upon the validity of claims and for their establishment, it would be unreasonable to deny it the right to designate

the courts as forums for such investigation, and said: "It seems anomalous to us to say that the framers of the Constitution meant to say that the State, through its Legislature, could not provide the particular court or courts in which claims might be established, but could provide for their establishment before the Highway Commission or other board or court of claims. Such course would be unnecessarily cumbersome and expensive, and less in keeping with the dignity of the State than to allow itself to be sued in its own constitutional courts upon such terms and conditions as its legislative body may prescribe. * * * We do not think that the act limits claims to those founded on contract. If the Highway Commission negligently injures a person in the construction of the State highways, there would be the same liability under the act as where it took or injured property, or committed a breach of contract relating to road construction." To this construction of the statute, Mr. Justice MEHAFFY agreed.

It will be seen that, out of the conflicting views of a majority of the several members of the court, a very definite result has been reached, *i. e.*, that in a proper case the Highway Commission may be sued when authority for the bringing of the suit may be found in the statute. Since this is the effect of the holding in both the Dodge and Baer cases, *supra*, we think it more important that this question be definitely settled than a too firm insistence be held to our individual views, and we now hold that, in all cases where the statute authorizes a suit, it may be maintained against the Highway Commission, whether it be thought to be a juristic person or whether § 20, art. 5, be merely declaratory of the general doctrine that the State may not be sued in her courts unless she has consented thereto.

The question remains, is this suit authorized by the statute? There are a number of statutes which authorize suits against the Highway Commission and which were considered by the court in previous cases, including the

Grable, Dodge and Baer cases, *supra*. We have held that suits *ex contractu* and for damages to property taken or injured in its exercise of the right of eminent domain are authorized by statute, and three of the justices have thought the statutes broad enough to include actions for recovery of damages for personal injuries. In that view, certainly, a suit upon *quantum meruit*, which is a contract the law implies, would come within the purview of the statute. One of the acts authorizing the bringing of suits against the Highway Commission is act No. 2 of the special session of 1928, but which the office of the Attorney General, in its able brief, contends was not within the purview of the Governor's call, and, because of that, invalid. It is argued that, since the call was "to enact a statute to require bonds in certain suits against the Highway Commission," this related only to suits of such a character as were then pending or threatened in the courts, and the authority to sue given by the act must be limited to suits of that nature. We do not think the language used justifies that narrow construction. It did not say in so many words that it related only to suits then pending, and this was not the way in which the Legislature construed the call. We must therefore, under well-settled rules, where the question is doubtful, place the same interpretation on the call as the Legislature. As we have seen, the Legislature in a number of acts has signified the State's assent to suits against the Highway Commission, and again registered that assent by § 17 of act 15 of the special session of 1932. The question of the validity of this act is now pending, but, whether valid or not, it is an indication of the Legislative will, but without it the authority sufficiently appears, and; if the act be upheld, it of itself makes absolute that intention.

In *Leonard* v. *State,* 185 Ark. 998, 50 S. W. (2d) 598, in holding that the Commission was required to let contracts for the construction and maintenance of highways in conformity with the requirements of the statutes, and that its neglect to do so rendered such contracts void, where it was argued that, although the contracts be held

void, the contractors should not be precluded from setting up whatever rights they might have, based upon *quantum meruit*, we said: "The only question presented by this appeal, the only one urged by appellants, and the only one we do decide, is the validity of the contracts mentioned in the bill of complaint"; and, in response to the argument that there might be contractors who, by reason of having furnished labor and materials to the Commission in the construction and repair of roads, and who had certain personal defenses or rights, ought to recover, even though the contracts might be void, we further said: "We are not undertaking to adjudicate any such rights in this opinion."

The result of our views is that the court below has jurisdiction to hear and determine the question of liability of the Commission, and its extent, for the work and material of which it has received the benefit. It follows therefore that the writ is denied.