ARKANSAS HIGHWAY COMMISSION v. DODGE.

4-3784

Opinion delivered January 7, 1935.

*Walter L. Pope,* Attorney General, and *Robert F. Smith,* Assistant, for petitioners.

*Louis Tarlowski* and *Charles W. Mehaffy,* for respondent.

BAKER, J., (after stating the facts). It can be of no benefit either to prospective or future litigants, or to the courts and attorneys of this State, to attempt a new analysis of the several cases wherein the Highway Commission or other State agencies, or *quasi* corporations, have been sued. In two opinions of this court, cases of this class have been collated, and by comparison distinguished one from the other. *Arkansas State Highway Commission* v. *Dodge,* 181 Ark. 539, 26 S. W. (2d) 879; *Watson* v. *Dodge,* 187 Ark. 1055, 63 S. W. (2d) 993.

In the case of *Arkansas State Highway Commission* v. *Dodge,* 186 Ark. 640, 646, 55 S. W. (2d) 71, we said: "It will be seen that, out of the conflicting views of a majority of the several members of the court, a very

definite result has been reached, *i e.,* that in a proper case the Highway Commission may be sued when authority for the bringing of the suit may be found in the statute. Since this is the effect of the holding in both the Dodge and Baer cases, *supra,* we think it more important that this question be definitely settled than a too firm insistence be held to our individual views, and we now hold that, in all cases where the statute authorizes a suit, it may be maintained against the Highway Commission, whether it be thought to be a juristic person or whether § 20, art. 5, be merely declaratory of the general doctrine that the State may not be sued in her courts unless she has consented thereto.''

Again in the case of *Watson* v. *Dodge,* 187 Ark. 1055, 63 S. W. (2d) 993, the above statement was quoted.

The foregoing rule however though seemingly such as to be applicable in all this class of litigation, is not one that has laid all the trouble, nor does it make the problems always easy of solutions. The difficulty arises, not from a misunderstanding of the rule, but from the application of it. There has perhaps been a lack of unanimity in the settlement of every such case.

In the case of *Arkansas State Highway Commission* v. *Dodge,* 181 Ark. 539, 541, 26 S. W. (2d) 879, the court said: ''The practice is well settled that, when it appears that an inferior court is about to proceed in a matter over which it is entirely without jurisdiction under any state of facts which may be shown to exist, then the Supreme Court, exercising supervisory control over the inferior court, may prevent such unauthorized proceeding by the issuance of a writ of prohibition. *Monette Road Imp. Dist.* v. *Dudley,* 144 Ark. 169, 222 S. W. 59.''

The question therefore which we must decide in the present case is, Is the suit of *Wood* v. *Highway Commission and State Treasurer,* really a proceeding against the Highway Commission as such, and against the State Treasurer, one for a failure to do or perform duties devolving upon them as officers, or is it a suit to force or coerce the State to make payment of an alleged claim by the plaintiff for compensation which he has alleged he has earned? If the suit of Wood is, in its final analysis,

a suit against the State of Arkansas, then it cannot be maintained, because it is in contravention of § 20, article 5, of the Constitution of the State, which provides that: "The State of Arkansas shall never be made defendant in any of her courts."

If this case of *Wood* v. *Highway Commission* were one in which there was authority, either express or arising by necessary implication, for his employment, and if there were also an appropriation for the payment of such services, as may have been rendered, allocated, with equal certainty, for that purpose, the problem here would be easy of solution.

Unhappily however this condition does not prevail. The allegations of the complaint, taken as true, together with the remedies sought must be considered in determining whether the jurisdiction of the Pulaski Chancery Court is invoked for a settlement or determination of the suit. It is urged in the respondent's brief that authority for the employment of Wood is found under § 2 of act 3 of 1933, which provides: "The director of highways, with the approval of the Commission, shall appoint such assistants and employees as the Commission may deem necessary." It is true the provision seems to be all-embracing, that it becomes authority for the employment of any one whose services are desired for any purpose by the director of highways, if his act of employment be but approved by the Commission.

But that provision of the law must be read in connection with all of the statutes authorizing, governing and controlling the conduct of the members composing the Arkansas Highway Commission. The Commission's powers are set forth somewhat specifically, and, of course, with the right to exercise such other powers as are necessary for the execution of the work for which the Commission was formed. Within that unquestioned grant of power or authority the Commission may act somewhat as a board of directors of a private corporation. We are of the opinion that some degree of strictness must be observed in the so-called "border line" matters. In other words, "necessary implication" means that if a matter were not of necessity essential to the execution of the

work, that authority would not be presumed by reason of expediency, even though it might, in the judgment of the Commission, or its director, be deemed to be of advantage.

The excellent brief furnished us on behalf of respondent furnishes an analysis of the benefits derived by the State from the alleged employment of Wood as an expert in traffic matters. It is argued that he procured cheaper freight rates for the delivery of road material. Such facts are however remote in the determination of the question of authority to employ Wood. If the authority did not exist, he cannot sue, however helpful his services may have been. Jurisdiction will not be presumed even from benefit derived. Probably, it may be said, with equal propriety, that if the Director of Highways, with the approval of the Commission, had the power to employ Wood, he might have the right to recover for services rendered, though he might be unable to show that real benefit resulted.

By an analysis and consideration of this case, we suggest that no statute has been cited showing power and authority to employ Wood by the Director of Highways, with or without the consent of the Commission, for the purpose of rendering the service he alleges he did render, nor does the theory of ''necessary implication'' justify his employment. The materials would have been delivered, the road would have been constructed, and the contractors would have been paid, if he had not been employed. Although it was the duty of the Highway Commission by the exercise of principles of economy to conserve the resources of the State, it was not authorized to delegate another to perform that duty.

There is another reason that seems cogent and effective in the determination of the matter here involved. There was no appropriation for the payment of this alleged obligation, from which we may imply the authority to employ Wood. That must be recognized and must be apparent from the nature of this suit. The excellent brief furnished us insists that Wood might be paid out of the appropriation made to the Highway Department, used for the payment of employees, laborers, servants,

etc. He does not come within the list of any of those named or set forth in the appropriation act, although most general terms are used. He is a rate or traffic expert. We think that fact is confessed by Wood in his suit, wherein he seeks to recover out of the fund saved, and to enforce his right by a process of restraining the Treasurer from paying out or disbursing a part of the funds furnished by the United States Bureau of Public Roads on one of the contracts. It may be urged that this part of the remedy sought by him, if illegal, would not effect other rights that might be legal. The point is however that the remedy sought by him is also against the Treasurer of the State, who is not a member of the Highway Commission.

Wood alleges and argues that this fund which has been bound by restraining order, in the custody of the State Treasurer, has become a trust fund for the payment of his claim and the claims of others in like situation as himself.

No change in the rule of the Highway Commission in regard to contracts, or the saving that might be made thereby, can enlarge the statutory powers conferred upon the Commission. The complaint and the specific remedy sought amount to a confession that the proceeding is one against the State, and that defendants are such nominally. Such a suit impinges upon the dignity of the State, and, if permitted, is contemptuous and destructive of its sovereignty.

It follows therefore the learned chancellor was in error in attempting the exercise of jurisdiction not unquestionably authorized.

The writ of prohibition is granted.

Justice MEHAFFY disqualified and not participating.

SMITH, J. (dissenting). The substance of the plaintiff's complaint is just this: That, with the approval of the State Highway Commission, he was employed by the director of highways and the acting chief highway engineer to secure the refund of excessive freight rates which had been paid on material used in seven contracts, which the highway commission had let pursuant to the authority so to do. The nature of the contracts was al-

leged to be such that the refund, if any, would inure to the benefit and credit of the highway commission. It was alleged that this service was performed and a refund of $14,701.07 was obtained and deposited in the State treasury to the credit of highway project No. 10,190. The freight had been paid on material used in the performance of contracts relating to that project. It was prayed that the plaintiff be compensated, on a *quantum meruit* basis for this service, and that, pending the adjudication of this liability, the State Treasurer be prohibited from disbursing or otherwise parting with the possession of this fund.

It must be remembered that this is not an appeal from any order or judgment adjudicating this liability, but is an application for a writ of prohibition to prevent the trial court from considering and determining that question. It requires no citation of authority to sustain the proposition, many times decided by this court, that relief by way of prohibition will be denied, if the court below has the jurisdiction to grant any relief, although it may not and should not grant the exact relief prayed. Stated otherwise, the question now presented to us is that of the jurisdiction of the chancery court to pass upon the claims presented against the Highway Commission.

There is no question in this case about appropriations. They were properly made and were in part expended, at least to the extent of paying the excessive freight, and it is alleged that $14,701.07 of the money so expended has been recovered back and deposited in the State treasury.

So that in the last analysis the only question here presented is the power of the Highway Commission to make a contract relating to the recovery of the portion of the money which had been erroneously expended for excessive freight charges on material used in the performance of contracts, which the Highway Commission had the admitted power to make. No one questions the power of the Highway Commission to make the seven contracts, or any one of them, in the performance of which material was used, on which it was necessary to pay freight to secure its transportation and delivery.

It was always conceded by every one that the State Highway Commission had the power to make contracts for the construction of highways. Otherwise the State's highway program could never have been put in motion. It is inconceivable that the State's highway program could have been carried out, or even put in motion, if there were lacking the power to make valid contracts relating thereto. It was questioned however whether any one who had contracted with the Highway Commission had the right to sue upon such a contract, to enforce which was regarded as contractual rights arising thereunder, or was compelled to defend upon the interpretation placed by the Commission on such contracts and compelled also to rely solely upon the Commission's sense of fairness to deal justly with the contractors.

Few questions have arisen in this State of more practical importance, and none have been given more careful consideration than was given to this question in the case of *Arkansas Highway Commission* v. *Dodge,* 181 Ark. 539, 26 S. W. (2d) 879. Certain contractors were of opinion that they had the right to go into the chancery court of Pulaski County to enforce what they conceived to be their rights under contracts which they had made with the Highway Commission. The Highway Commission sought to prohibit the prosecution of this suit upon the ground that it was a suit against the State, and a writ of prohibition was prayed in this court. The writ was denied, and it was there held, to quote a headnote in that case that "A suit by highway contractors against the State Highway Commission for the amount due under a highway construction contract was maintainable."

The decision was one of those anomalies which are to be found in the reports of the decisions of courts of last resort, when a majority of the court reach a conclusion, but where the conclusion is based upon different reasons in none of which the majority agree. The situation is always unfortunate, but is sometimes unavoidable; but such cases are to be found, not only in the reports of the decisions of this court, but also in the decisions of other courts. It is not thought necessary to cite or review those cases.

This difference of opinion continued in other similar suits until finally the case of *Arkansas Highway Commission* v. *Dodge* arose. 186 Ark. 640, 55 S. W. (2d) 71. In that case certain contractors brought suit in the Pulaski Chancery Court against the Highway Commission to recover, as upon *quantum meruit,* the value of labor and material furnished the Commission in the construction of certain roads and bridges in the State's highway system. A writ of prohibition was prayed there, as in this case. The previous cases were reviewed, and it was there said: "It will be seen that, out of the conflicting views of the several members of the court, a very definite result has been reached, *i.e.,* that in a proper case the Highway Commission may be sued where authority for the bringing of the suit may be found in the statute." As the authority was said to exist, the writ was denied and the contractors were permitted to proceed with their suits.

The majority opinion in the instant case quotes that statement and reaffirms it. The writ in the instant case should therefore be denied.

It is said however that there is no specific appropriation for the payment of this demand. It is not essential that there should be. There has never been a specific appropriation to buy a yard of sand or a sack of cement or to pay the freight thereon; nor was there any specific appropriation to pay the freight which the plaintiff here alleges was recovered in part; yet the right to pay this freight in the first instance is not questioned. It was a power implied from the general authority to construct roads. Material is necessary for that purpose, it must be transported and freight thereon must be paid to have that done. The payment of the correct amount of freight, and no more is a power necessarily incident to the construction of the State's highway system. It is a matter with regard to which the commission had a right to contract as an incident to the discharge of their general duty to construct roads.

The writ should therefore, in my opinion, be denied, if we are to follow our numerous previous decisions on the subject, and I therefore must respectfully dissent.