ARKANSAS STATE HIGHWAY COMMISSION *v.* NELSON BROTHERS.

4-4026

Opinion delivered November 4, 1935.

*Carl E. Bailey,* Attorney General, *Neil Bohlinger, Leffel Gentry* and *W. L. Pope,* for appellant.

*Mahony & Yocum,* for appellee.

BUTLER, J. The trial court entertained jurisdiction of a suit instituted by the appellees against the appellant, Arkansas State Highway Commission, to recover balance alleged to be due for construction work done on State highways under a contract with the commission. The appeal prayed from the decree awarding to the appellees the amount claimed challenges the jurisdiction of the court.

The lower court doubtless based its decision on the cases of *Arkansas Highway Commission* v. *Dodge,* 181 Ark. 539, 26 S. W. (2d) 879; *Baer* v. *Arkansas Highway Commission,* 185 Ark. 590, 48 S. W. (2d) 842, and *Arkansas State Highway Commission* v. *Dodge,* 186 Ark. 640, 55 S. W. (2d) 71. The appellant insists (1) that the case at bar is distinguishable from the cases, *supra,* and comes within the exception of *Watson* v. *Dodge,* 187 Ark. 1055, 63 S. W. (2d) 993, and the late case of *Ark. State Highway Commission* v. *Dodge,* 190 Ark. 131, 77 S. W. (2d) 981, and (2) that the instant case is one in effect against the sovereign State and is prohibited by § 20, art. 5, of the Constitution of 1874. The appellees insist that there is no valid distinction in principle between the instant case and the cases first cited, and that it is ruled by them.

It is difficult to reconcile our decision in the first-named cases with the two last pronouncements of this court. We refrain from an analysis and comparison of these cases, but it must be confessed that they appear not to be in harmony and the two later cases—and especially the Dodge case in the 190 Arkansas seem to impair the validity of the cases first mentioned. Candor also compels the admission that the result serves as an uncertain guide for the profession and the trial courts.

The important question is: shall we attempt to distinguish the instant case from the three cases first cited, or shall we re-examine those cases, and, if the principles there announced clearly appear to be erroneous, shall we do in fact what appears to be implied in the last Dodge case, namely, abandon our erroneous views and overrule those cases? We prefer the latter course, although it involves this court in some degree of embarrassment.

In *Arkansas Highway Commission* v. *Dodge,* 181 Ark. 539, 26 S. W. (2d) 879, five of the justices were of the opinion that the plain provisions of § 20, art. 5, of the Constitution prohibited the State from giving its consent to its being made the defendant in any of its courts. Five justices held that the Arkansas Highway Commission was a State agency, and that a suit against it was in effect a suit against the State. With these views enter-

tained by the majority, the illogical conclusion was reached that the Highway Commission, although the State's *alter ego,* could be made the defendant in the courts. This result flowed from the concurrent opinion of four of the justices, two of whom held that the Commission was not an agency of the State but "a legal entity," or "a juristic person" and, as such, was without the pale of the immunity to suit inherent in the sovereign. The other two judges held to the view that the Highway Commission was an agency of the State engaged in the discharge of the State's sovereign functions, but that the section of the Constitution, cited *supra,* was not mandatory, but simply declaratory of the inherent immunity of the State to suit except by its consent; that the State had consented by legislative enactment to suits against it, and therefore the suit against the Highway Commission could be maintained.

We first examine the theory that the Highway Commission is not an agency of the State, but a mere legal entity. This theory is bottomed on the authority of the case of *State ex rel. State Highway Commission* v. *Bates,* a case decided by the Supreme Court of Missouri and reported in 317 Mo. 296, 296 S. W. 418. In so far as we . are advised, or our research extends, this case ·stands unique in the history of jurisprudence, and the principle there announced that a body clothed with the powers of the State and delegated to perform its duties is not an agency of the State but a mere legal entity (whatever that may be). We submit that this principle is based on neither reason nor authority, and the cases cited in support of it do not in fact lend support to that doctrine. Moreover, the Constitution of the State of Missouri does not contain the prohibition, or one similar to that of § 20, of art. 5, of our Constitution, and the Supreme Court of Missouri expressly found in that case that the State which created the commission subjected it to be sued by express statutory provision, and that "if it is in fact and in law the State, the State has consented to suit being brought." Although this conclusion was reached, the court proceeds with the following unnecessary remarkable declaration: "It (the commission) is

not the State, but a mere entity created by the State for the specific purpose of contracting of the building of State highways and bridges and the maintenance of the same, and doing all other things pertaining thereto." It is upon this pronouncement that the opinion of two of the judges in the first Dodge cases is based.

A case cited by the Missouri court as "a case fully in point" is *Cross* v. *Ky. Board of Managers of World's Columbian Exposition,* 105 Ky. 840, 49 S. W. 458. In that case the board of managers was authorized by the act creating it to operate a restaurant in connection with the State building erected at the exposition. The suit was brought to recover for a breach of contract in the operation of the restaurant. The court said: "The erection of the headquarters building and the running of a restaurant were matters of business in which this board stood on the same plane as others engaged in like undertakings." The nature of the business, then, in which the board of managers was engaged was not a discharge of the sovereign functions of the State, as is the business of constructing, maintaining and operating the State's highways. The Constitution of the State of Kentucky in § 231 thereof provides: "The General Assembly may by law direct in what manner and in what courts suits may be brought against the Commonwealth." The reasoning of the Kentucky case seems to place liability on the State on the ground of consent more than on the nature of the business engaged in. We do not review the other cases cited, but it would seem that they come from States in which there is no prohibition against consent being given to suits, and do not support the declaration we have quoted from the Missouri court or persuade us that such declaration announces sound doctrine.

If the power delegated and the duties to be performed by the Highway Commission are essentially public in their nature, then it must be the agent of the State, for in the nature of things the State must act through agents, and these, while in the discharge of public duties, stand in the place of the State. The Highway Commission, by the act creating it, is clothed with the power and the duty to construct, operate and maintain highways.

If these powers and duties rest primarily in the State, the Highway Commission, when clothed therewith, is something more than the "legal entity" thought to be its status. In *Williams* v. *Parnell,* 185 Ark. 1105, 51 S. W. (2d) 863, in speaking of legislation relating to highways, the court said: "In it the Legislature declared it to be the policy of the State to take over, construct, repair, maintain and control all the public roads in the State, comprising the State highway system as defined in the act." In that case, in upholding the right of the State to issue bonds for the purpose of borrowing money to construct highways and to levy taxes for their support, the court further said: "The reason is that highways may be constructed and maintained for public use, by the State itself or by governmental agencies created by law for that purpose. Public highways are for public use, and there is no reason why the power of taxation by the State may not be exercised in their behalf. While it is elemental that taxes may only be levied for a public purpose, one of the most important duties of the State is to provide and construct public highways." (Citing *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9.) Numerous authorities might be cited to support this statement, and we apprehend there are none to the contrary. Illustrative of these are *Wooster* v. *Arbentz,* 116 Ohio St. 281, 156 N. E. 270, 52 A. L. R. 518; *Robbins* v. *Limestone County,* 114 Tex. 345, 268 S. W. 915; *Kansas City Bridge Co.* v. *Alabama, etc.,* 59 Fed. (2d) 48; and *Dougherty* v. *Vidal,* 37 N. M. 256, 21 Pac. (2d) 90.

If, then, the Highway Commission discharges duties primarily residing in the State, it must of necessity be the State's agent. This was the express holding in *Dougherty* v. *Vidal, supra,* and in the advisory opinion to the Governor, 94 Fla. 967, 114 So. 850. In the last case the court said: "The road department is a State agency and component part of the State government. The product of its work is State property, it exercises a part of the sovereign power of the State, and its activities are supported by funds created by State taxes and Federal aid funds." This is also necessarily implied by the language of the court in *Williams* v. *Par-*

*nell, supra.* Indeed, a majority of this court has always held that the Highway Commission is the agent of the State. In *Pitcock* v. *State*, 91 Ark. 527, 121 S. W. 742, this court, in holding that the penitentiary board was an agency of the State and as such not amenable to suits in our courts, said: "The penitentiary board is created by statute as the agent of the State to manage and provide for working the convicts of the State. That board has the power to make contracts for the State, and it is the sole agent of the State in the performance of such contracts. The board does not perform merely ministerial acts; what it does involves judgment and discretion and all that it does for the State."

We perceive no just distinction between the penitentiary board in its relation to the State and the Highway Commission. Both discharge public duties, receiving authority from the State, and, if one is the agent, the other must be.

We proceed next to an examination of the position of the two justices holding that the State could have, and has, given its consent to suits against the highway commission. As has been heretofore stated, a majority of this court has always held that § 20, art. 5, *supra,* providing that "the State of Arkansas shall never be made defendant in any of her courts" was mandatory, and that by reason thereof the State was incapable of giving its consent to being sued in the courts. There was no case cited in the first Dodge case, or in the Baer case, *supra,* which in our opinion sustains the view of the justices as to our constitutional provision quoted. The most that can be said for these cases, both from our own court and from the Supreme Court of Alabama, is that a liberal construction has been given certain constitutional provisions which may have departed from the letter of the same. But these are no authority for so great a departure as the theory under discussion would have us go. The language of the quoted prohibition is so precise and clear as to admit of no room for interpretation or for any refinement of judicial construction which would obscure or change the common and ordinary meaning of the words employed. The case of *Pitcock* v. *State, supra,*

when examined from its four corners and considered in connection with the later case of *Jobe* v. *Urquhart,* 98 Ark. 525, 136 S. W. 663, indicates a clear intention to give full effect to our constitutional prohibition. In the Pitcock case we find this statement: "All who contract with the State must do so with full knowledge that they must rely solely on the legislative branch for the performance of the contract and for satisfaction of the State's just obligations." Reinforcing the view that a literal interpretation of the constitutional prohibition must be adopted is the fact mentioned in *Watson* v. *Dodge, supra, i.e.,* that the Constitution of 1868 provided that the General Assembly should direct by law in what manner and in what courts suits might be brought by, and against, the State, and that this provision was eliminated from the Constitution of 1874 and § 20, art. 5, *supra,* was included. This fact is significant and precludes the idea suggested by the late Chief Justice HART in his opinions in the Dodge and Baer cases, *supra,* that the provision was merely declaratory of the immunity of the State from suit without its consent. It is clear that, if this were true, the Constitution of 1874 would have re-enacted the provision of the Constitution of 1868 or said nothing on the subject, under which, in the latter case, under settled principles, the State could have consented to be sued. It is a matter of history that at the time of the adoption of the Constitution of 1874 the State was emerging from a period in which its very foundations had been shaken. Its resources were exhausted, and many fraudulent and unjust claims were being made against it, and, as suggested in the case of *Watson* v. *Dodge, supra,* the impelling motive for the prohibition that the State should not be made a defendant in its courts was similar to that which brought about the adoption of the eleventh amendment to the Federal Constitution, stated in *Cohen* v. *Virginia,* 6 Wheat. 264.

The State Constitution of Alabama contains a provision practically identical with our own, and which expressly prohibits the State from being made a party defendant in any court of law or equity. Under that provision the Supreme Court of Alabama held in the case

of *Alabama Industrial School* v. *Reynolds*, 143 Ala. 579, 42 So. 114, and in the *Alabama Ind. School* v. *Adler*, 144 Ala. 555, 42 So. 116, 113 Am. St. Rep. 58, that neither the State nor any of its agencies could be sued, and the courts were without jurisdiction. In the latter case it is said: "There is not only no law giving the court capacity to entertain the complaint against the defendant, but there is the section of the organic law of the State which prohibits such capacity. There is no provision in the Constitution by which the exemption of the State from suit may be waived." This is identically the situation in this State.

In *Arkansas State Highway Commission* v. *Dodge*, 186 Ark. 640, 55 S. W. (2d) 71, the court reached a unanimous opinion following the first Dodge case and the Baer case without attempting to justify those decisions, but bending to the will of the majority and treating the question as *fait accompli*. Whatever the motives constraining the court, that decision is indefensible on legal principles. The human element in Legislatures and courts, following a natural impulse, abhors an injustice perpetrated without a forum in which the right denied or the wrong suffered may be asserted or redressed. Therefore we find Legislatures devising means for the assertion of rights or the redress of wrongs, even when the State is involved, and the courts are as sensitive to such impulse as the Legislatures. On that account, laws are often enacted and decisions rendered to effectuate abstract justice, but which on no just grounds can be sustained except by unsound or specious reason. An apt illustration of this is found in the cases which we have reviewed. It is with reluctance that we have undertaken this review, but we are impelled by the conviction that those decisions are wrong. We realize that the overruling of a decision has a tendency to render the laws of the State less certain. In this case, however, to adhere to our former decisions would be, as we conceive it, nothing short of judicial usurpation. It is our settled conviction that the State cannot give its consent to the maintenance of an action against it and the court below was without jurisdiction. No one has a vested right to sue

the State, even when that privilege may be, and has been, given; it may be withdrawn even where a suit has been commenced without disturbing any vested right.█ *Beers* v. *State,* 20 Howard 527. "The plaintiff cannot complain because the court overruled its former decision, even though that decision permitted the plaintiff to maintain its suit similar to the one now before us." *Pitcock* v. *State, supra.*

It follows that the decree of the trial court must be reversed and the case dismissed, and the cases of *Ark. Highway Commission* v. *Dodge,* 181 Ark. 539, 26 S. W. (2d) 879; *Baer* v. *Ark. Highway Commission,* 185 Ark. 590, 48 S. W. (2d) 842, and *Arkansas Highway Commission* v. *Dodge,* 186 Ark. 640, 55 S. W. (2d) 71, are expressly overruled, and so much of the opinion in *Grable* v. *Blackwood,* 180 Ark. 311, 22 S. W. (2d) 41, as tends to support the doctrine of the cases overruled is also overruled.

Smith and Mehaffy, JJ., dissent.

Smith and Mehaffy, JJ., (dissenting). The effect of what is now the majority opinion is that the State Highway Commission may make contracts for the construction, maintenance, repair, etc., of the State's highways, but the courts of the State will not be permitted to lend their aid to secure their enforcement. Any differences between the contracting parties growing out of the performance of these contracts must be referred to the General Assembly for adjustment and settlement.

It is fortunate for the State that this decision was rendered at the conclusion—rather than at the beginning —of the State's road-building program. It is very doubtful whether the Highway Commission could have contracted advantageously, had contractors and road builders been advised, when the State first entered upon its road construction program (under the provisions of the Martineau road legislation, Acts 1927), that they were entirely at the mercy of the Highway Commission and its employees and representatives in the settlement of the many and varied questions which might arise, and

which actually arose, under the almost innumerable contracts which the road program made necessary. It is not only probable, but it is reasonably certain, that if contractors had known that upon making a contract with the Highway Commission they made themselves dependent upon the sense of fairness of the Commission and its employees, with no remedy, in case of disagreement, except an appeal to the General Assembly, contract prices must necessarily have been made to compensate the hazard.

But this now appears to have been what they did, and what future contractors will necessarily do. These contractors make bond to secure the faithful performance of their contracts, which bind them and their sureties, but the other contracting party (the Highway Commission) is not bound. The contractor has no forum where he may present his side of any controversy relating to his contract except the General Assembly. He must accept what is offered. He must take what is given. No court or other forum may hear his complaint that the engineer, inspector or other agent of the Highway Commission has acted ignorantly or corruptly or has misinterpreted or misapplied the provisions of the contract. He may, however, apply to the General Assembly, which, if it pleases, may hear him. A result so unfair should not be reached unless compelled. Does the Constitution compel it?

Justice MEHAFFY and I fully concur in so much of what is now the majority opinion of the court which holds that the State is immune from suits in the courts of this State, and that the General Assembly is without power to give that consent. We expressed that view in the opinion in the case of *Arkansas State Highway Commission* v. *Dodge*, 181 Ark. 539, 26 S. W. (2d) 879, which case, for brevity, will hereinafter be referred to as the Dodge case.

Arkansas and Alabama are among the few States whose Constitutions contain provisions denying the General Assembly of the State the power to consent to such suits. The Constitutions of the majority of the States are either silent, like that of Missouri, or contain direc-

tions to the General Assembly to direct by law in what courts and in what manner suits may be commenced against the State. The Constitutions. of this State of 1836, 1861, 1864 and 1868 contain this latter provision.

The majority say: "Five justices held (in the Dodge case) that the Arkansas Highway Commission was a State agency, and that a suit against it was in effect a suit against the State." This was never, and is not now, my opinion or that of Justice MEHAFFY. It was and is our opinion, as expressed in the Dodge case, that the suit there authorized was not in fact or in effect a suit against the State. The majority say it is unimportant to distinguish the Dodge case from the instant case, as the Dodge case has been expressly overruled. Justice MEHAFFY and I shall not, therefore, now consider whether there is any distinction.

It is true Justice MEHAFFY and I were much persuaded by the reasoning of the Supreme Court of the State of Missouri in the case of *State ex rel. State Highway Commission of Missouri* v. *Bates*, 317 Mo. 696, 296 S. W. 418. We thought it was exactly in point, and that its reasoning was perfectly sound. It was rendered by the Supreme Court of Missouri *in banc,* and obviously after full investigation and reflection. The opinion recites that all the Justices concurred. The case will speak for itself. That it sustains the views expressed by Justice MEHAFFY and the writer is conceded in the majority opinion. They say, however, that, although this is true, the Missouri case is without authority in this State for the reason that the Constitution of Missouri, unlike that of this State, contains no inhibition to the General Assembly of the State against giving consent to suits against that State. But, as we said in the Dodge case, "The opinion (of the Supreme Court of Missouri) begins with a quotation from a former opinion of the Supreme Court of that State, where Justice LAMM, speaking for the court, had said: 'That the sovereign State may not be sued is a truism,' and while it was added that the sovereign may, by law (under the Constitution of that State), give consent to the citizen to sue it, the point was expressly decided and made the basis

of the decision that the suit was not in fact against the State."

The authority of that case for the views expressed by Justice MEHAFFY and myself is, therefore, not to be impaired because the Constitution of Missouri does not contain the inhibition found in ours, for, as was held by the Supreme Court of that State, the inhibition exists in that State, although their Constitution is silent on the subject. The point there decided was that this inhibition, which existed notwithstanding this silence, did not deprive the General Assembly of that State of the power to create an agency to supervise the construction of State highways and to make appropriations for that purpose and to authorize this agency or entity, as it was there called, to make contracts relating to these appropriations and to set up a forum wherein differences arising out of these contracts might be adjudicated. The legislation of this State referred to in the opinion in the Dodge case was to the same effect as that of Missouri. A similar agency or entity had been created with similar powers. What we there said expressed the view which we still entertain and which were there summarized as follows:

"In the proceedings there provided for a judgment might be rendered fixing a liability against the Highway Commission, but a judgment so rendered would not be a judgment against the State as such, and could not be enforced by the seizure or sale of the property of the State, as a judgment could be enforced against a private litigant. Satisfaction can be had only out of the fund specifically appropriated for the purpose in regard to which the Highway Commission was authorized to contract.

"The appropriation for the use of the Commission is a fund set aside for a specific purpose. The Highway Commission is an entity, or juristic person, created to disburse this money in payment of work which it is authorized to contract for, and, while the appropriation was not made specifically to satisfy judgments rendered against the Commission, it was contemplated that judgments might be rendered, and the appropriation is the

State's provision for their payment. It was not contemplated that the Highway Commission should accede to every demand of every contractor, yet it was contemplated that in the expenditure of a sum of money so large the Highway Commission, in its zeal to protect the fund, might take positions which, if persisted in, would work injustice to some contractor, who could not sue the State as such. Therefore, a forum was constituted where these differences might be adjusted according to applicable legal principles, this forum being the courts at the seat of government in Pulaski County.''

Entertaining these views, Justice MEHAFFY and I joined in making the opinion in the case of *Watson* v. *Dodge,* 187 Ark. 1055, 63 S. W. (2d) 993. In that case an attempt was made to seize and operate a State-owned toll bridge, and we voted to prohibit that action, because, as we had said in the Dodge case, the State's property could not be seized or sold. The majority say the law is unsettled and uncertain, and so it is, but that uncertainty arose out of the recent case of *Arkansas Highway Commission* v. *Dodge,* 190 Ark. 131, 77 S. W. (2d) 981, where it was held for the first time that a suit against the State Highway Commission was a suit against the State. Mr. Justice MEHAFFY was disqualified and did not participate in that case. I dissented.

We do not agree that the Missouri case, *supra,* furnished us the only authority for our views expressed in the Dodge case. We there said: ''The instant case is somewhat similar to the recent case of *Urquhart* v. *State,* 180 Ark. 937, 23 S. W. (2d) 963.'' That case had been decided by an undivided court. It was a continuation of the litigation begun to collect a balance alleged to be due from the State upon a purchase of lands for use as a State Penitentiary, reported in the case of *Jobe* v. *Urquhart,* 98 Ark. 525, 136 S. W. 663, which case is cited in the majority opinion in the instant case. It is interesting to note that the opinion in this case of *Jobe* v. *Urquhart, supra,* reversed the chancellor by a vote of two to three, Justices WOOD and HART dissenting. The unsuccessful litigants, the Urquharts, pursued their remedy to the Legislature, and that body, instead of

granting relief, as it might have done, passed, at its 1929 session, legislation which constituted the chancery court of Pulaski County as an agency to adjudge the extent of liability of the State remaining unpaid upon the contract to purchase a State convict farm.

We there said of this legislation in the last appeal of the Urquhart case, *supra*: " 'The Legislature might have ascertained the amount, both of principal and interest, and have made an appropriation accordingly, but it elected to constitute another agency to make this finding of fact, and made an appropriation in what was assumed to be a sufficient amount to pay both the principal and the interest, and, under the remittitur which has been entered, the appropriation is sufficient.' It is true that suit was brought by the State, as the act provided it should be, but the act also provided that the State's vendor might litigate his claim for interest, and that either party should have the right to appeal from an unfavorable decision."

No member of the court as it was then constituted thought that the creation of this agency to adjudicate this controversy was a suit against the State. The opinion was delivered by a unanimous and undivided court only about two months before the opinion in the Dodge case was delivered.

But the opinion in the Dodge case referred to another case even more directly in point than the Urquhart case. We there said: "The instant case is more like that of *Grable* v. *Blackwood,* 180 Ark. 311, 22 S. W. (2d) 41."

In the Grable case, which is reported in the same volume of our reports as the last Urquhart case, the opinion was written by Chief Justice HART, of honored memory, who spoke for an undivided and unanimous court. It cannot be distinguished from the Dodge case. Like the Dodge case, it was a suit against the State Highway Commission, and was begun in the courts of Pulaski County. Its purpose was to compel the Highway Commission to make a disbursement of a portion of an appropriation for road purposes in accordance with what the plaintiff citizens thought was the duty of the Com-

mission to do. There were two suits seeking this relief, one in the Pulaski Circuit Court, the other in the Pulaski Chancery Court. The relief prayed had been denied in each court, and the appeals from that action were consolidated and disposed of by the opinion in the case of *Grable* v. *Blackwood, supra.* The judgment of the circuit court and the decree of the chancery court were both reversed in this opinion by Chief Justice HART, and the causes were remanded with directions to compel the Highway Commission to carry out the provisions of the appropriation act and for further proceedings in accordance with the opinion. The directions required the courts of Pulaski County to do what we said in the Dodge case they had jurisdiction to do.

The majority now say that "* * * so much of the opinion in *Grable* v. *Blackwood,* 180 Ark. 311, 22 S. W. (2d) 41, as tends to support the doctrine of the cases overruled is also overruled." If any portion of the Grable case still remains as the law of this State, the confusion engendered by the opinion in the case of *Arkansas Highway Commission* v. *Dodge,* 190 Ark. 131, 77 S. W. (2d) 981, has not been removed.

Justice MEHAFFY and I believe the opinion in the Dodge case is sound in principle and is fully supported by our own cases herein cited as well as by the Missouri case, also cited. We therefore dissent from the present opinion which overrules the Dodge case.